KITCHELL
v.
VANADAR.

## KITCHELL v. VANADAR.

The carriers of a quantity of salt by water purchased a boat on their way, to ascend a certain river towards the place of destination; and deposited with the seller a part of the load as a security for the price of the boat, informing him they were carriers: *Held,* that this disposal of the property was unauthorized; and that the right to the possession of it continued in the original owner.

*Held,* also, that a bona fide purchaser of goods from a bailee, out of market overt, cannot hold them against the general owner.

*Saturday,*
*May 14.*

ERROR to the *Vanderburgh* Circuit Court.

Scott, J.—*J. M. Porter, E. Porter,* and others, who were carriers, purchased of *Vanadar* a boat; and told him, at the time of making the contract, that they were carriers, and purchased the boat for the purpose of ascending *Green* river with a cargo of salt, to the place of destination; and they deposited with *Vanadar* 20 barrels of salt, as a security for the price of the boat. *Shrewsberry* and *Crocket,* who were the owners of the cargo, sent *Kitchell,* as their agent, to take charge of the salt and dispose of it. *Kitchell* took the 20 barrels which were left with *Vanadar;* for which *Vanadar* brought an action of trover in the *Vanderburgh* Circuit Court, and had judgment. On the trial of the cause, the Court instructed the jury, that although it was proved that *Shrewsberry* and *Crocket* were the owners of the salt, that *Kitchell* was their lawfully authorized agent, and that the carriers had no right or instructions to sell it, still the sale to *Vanadar* was good, and the agent of *Shrewsberry* and *Crocket* had no right to take it. The defendant's counsel, conceiving that the Court had misdirected the jury, moved for a new trial, which was refused. Exceptions were taken to the opinion of the Court, and the bill of exceptions was sealed and made a part of the record. We are now called on to decide upon the propriety of these instructions.

It is a general rule of law, sanctioned by sound reason and the common understanding of mankind, that no one can, by his sale, transfer to another a right of property in a thing of which he is not himself the owner. To this rule, however, the laws of *England* contain some exceptions. For the security of purchasers in their contracts, and for the encouragement of commercial intercourse, the law is, that all sales of things vendible, in market

overt, shall not only be good between the parties, but shall also be binding on all others who have any right or property therein. 2 Bl. Com. 449. On the same principle it has been held, that if a bailee of goods give or sell them to a stranger, the bailor cannot maintain an action against the vendee for the specific articles, for by the sale and delivery by a person who has a special property in and possession of the goods, the general property of the bailor is divested. This is stated as the law in 2 Saund. 47, b, n. 1.—6 Bac. 684. Strange, 505, and Sir T. Jones, 114, are also cited. Brook's Abridgment seems to be the leading authority on this point, to which the later cases all refer. Bro. 216, 295. But in the more modern decisions, the doctrine in Brook is denied to be law, and the current of authorities now seems to be, that no unauthorized act of a bailee can divest the bailor of his general property. See 1 Wils. R. 8.—1 Johns. R. 471.— Hard. R. 531. But had the doctrine of Brook, and the subsequent decisions founded upon it, never been disputed, it would not apply to the present case. The law as there laid down is, that if the bailee or other person who has only a special property, sell and deliver the goods to another as his own, bona fide and without notice, the general owner cannot maintain an action against the vendee. Here it is in evidence, that the persons of whom *Vanadar* received the salt told him, at the time of making the contract, that they were carriers, and thereby gave him an ample opportunity to guard his interest by inquiring into the extent of their authority, or demanding a different security. We think the instructions given to the jury by the Circuit Court were incorrect, and the judgment must therefore be reversed (1).

*Per Curiam.*—The judgment is reversed, and the verdict set aside, with costs. Cause remanded, &c.

*Battell*, for the plaintiff.

*Hall*, for the defendant.

(1) The master of a ship may hypothecate either ship or cargo, or even sell a part of the latter, when necessary to enable him to continue his voyage. And, in the case of a wreck, if the cargo saved be perishable, and the master have no means of transhipment, he has a right to sell. *Freeman* v. *The East India Co.* 5 Barn. & Ald. 617. To justify a sale, however, the necessity must be extremely clear. In the above-cited case, the ship had been wrecked off the Cape of Good Hope, and some boxes of indigo saved. The master sold the indigo at the Cape by public auction. Afterwards, the original owners recovered in trover against the purchasers; the jury finding there had been no necessity for the sale. Vide *Reid* v. *Darby*, 10 East, 143.