May Term, 1848.

INGERSOLL
v.
EMMERSON.

---

## INGERSOLL and Another *v.* EMMERSON.

If the plaintiff, in an action of replevin, show a *prima facie* right to the possession of the property, the verdict should be in his favor, unless the defendant prove a better title.

If the bailee of goods for a particular purpose, not having the *indicia* of property other than its possession and control, transfers them, in contravention of such purpose, to a *bona fide* purchaser without notice, the latter cannot resist the claim of the real owner.

Wednesday,
May 31.

APPEAL from the *Allen* Circuit Court.

SMITH, J.—This was an action of replevin brought by

the appellants against the appellee for a canal boat.
Pleas—1st., *non cepit;* 2d, *non detinet;* 3d, property in the
defendant; 4th, 5th, and 6th, property in other persons.

There was a trial by jury which resulted in a verdict
for the defendant. Motion for a new trial overruled,
and judgment *de retorno.*

The testimony is set out in a bill of exceptions. It
appears that, on the 31st of *December,* 1842, *Ambrose S.
Holliday* and *John T. Holliday,* trading as a firm styled
*John T. Holliday* and *Co.,* were the owners of the canal
boat, *Transit,* then lying in the harbor at *Cleveland, Ohio,*
and mortgaged it to *Ingersoll* and *Bouche,* to secure the pay-
ment of six drafts, drawn by *M. R. Holliday* and *Co.,* upon
*John T. Holliday* and *Co.,* and accepted by the latter firm.
The drafts were dated in *September,* 1842, and payable at
different periods. It was stipulated in the mortgage that
the said *Ingersoll* and *Bouche* should take possession of the
boat whenever they should deem it necessary for their
security, and hold the same until the drafts should be
fully paid.

The drafts had been placed in the hands of *Andrews,
Foot,* and *Hoyt,* attorneys at *Cleveland,* for collection. The
mortgage was executed at the office of the said attorneys.
Mr. *Hoyt,* one of the last mentioned firm, who was a wit-
ness at the trial, stated that the boat remained in the har-
bor of *Cleveland,* during the winter and spring of 1842–'
43; that he and his said partners kept possession and
control of her, and, on the 10th of *May,* 1843, they per-
mitted *Gideon Holliday,* who was a brother of *John T.
Holliday,* to run the boat, as captain, for the season of
1843, they taking from him a memorandum, in writing, in
which, after reciting that whereas said *Ingersoll* and *Bouche*
held a mortgage on said boat to secure the payment of
certain debts, and whereas he, the said *Gideon,* was mas-
ter of said boat, and proposed to run her during the said
season, he certified that he held said boat under said *In-
gersoll* and *Bouche,* and agreed to pay to them all her earn-
ings over and above her expenses, to be applied towards
the payment of said debts. The memorandum also stat-

CASES IN THE SUPREME COURT

ed, that said *Ingersoll* and *Bouche* were not to be liable for any loss, damages, or expenses, connected with the running of the boat, with which they were in no wise concerned, except by having the right to determine the possession of the said *Gideon*, and to receive the net earnings.

Mr. *Hoyt* also stated, that it was understood, at the time of the execution of the above mentioned memorandum, that the boat was to be run on the *Ohio* canal; but a few days after he found, upon inquiry, that said boat, without his knowledge, or that of his co-partners, had been taken to *Toledo*, to be run on the *Wabash* and *Erie* canal. On receiving this intelligence, he remonstrated with *John T. Holliday* against the course which had been taken in removing the boat, and was assured by the latter that said boat should continue, in all respects, under the control of *Ingersoll* and *Bouche*, and that said *Gideon* would faithfully account to them, after every trip, for her earnings.

This suit was commenced on the 10th of *October*, 1844. The boat was then at *Lafayette*, in this state, in the possession of the defendant, of whom a demand had been made, but who had refused to deliver her to the plaintiffs. But a small part of the mortgage debt had been paid.

The plaintiffs having closed their testimony, the defendant introduced some evidence to prove that *Gideon Holliday* sold the boat in the spring of 1844, to *John Hains*, who sold her to *Thomas Hains*, who sold her to the defendant.

Some instructions were given by the Court which were complained of, and some evidence was admitted which was objected to, but we shall not examine the questions thus raised, as we are satisfied, from the whole of the testimony introduced, that the plaintiffs should have had a new trial. Having shown a *prima facie* right to the possession of the boat, the verdict should have been in their favor, unless the defendant proved that he had a better title. This he certainly failed to do. *Gideon Holliday* appears to have come into the possession of the boat through the plaintiffs as their bailee. As such he had no authority to sell, and a title derived through him was

wholly worthless.  If a bailee of goods for a particular purpose transfers them, in contravention of such purpose, even although it be to a *bona fide* vendee without notice, the latter cannot resist the claim of the owner.  *Kitchell* v. *Vanador*, 1 Blackf. 356.—Story on Bailments, 79. There may be, it is true, exceptions to this general rule. Thus it is said in *Dryer* v. *Pearson*, 3 B. & C. 42, that if the real owner of goods suffer another to have possession of his property and of those documents which are the *indicia* of property, and thus enable such other to hold himself out to the world as having both the possession and ownership, then, perhaps, a sale by such person would bind the true owner.  But this was in a case quite different from that now under consideration.  *Gideon Holliday* is not shown to have had any other *indicia* of ownership, than the mere possession and control of the boat as master, and that is not sufficient to bring the case within such an exception.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

*W. H. Coombes*, for the appellants.

*D. H. Colerick* and *J. G. Walpole*, for the appellee.